**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ELIZABETH ROBISON, | ) | CASE NO. 4:19-cv-00267 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Elizabeth Robison (hereinafter "Plaintiff"), challenges the final decision of

Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"),

denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423,

1381 *et seq.* ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is

before the undersigned United States Magistrate Judge pursuant to an automatic referral under

Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the

Magistrate Judge recommends that the Commissioner's final decision be affirmed.

### I. Procedural History

On February 19, 2015, Plaintiff filed her applications for DIB and SSI, alleging a disability

onset date of January 26, 2015. (Transcript ("Tr.") 357-362). The application was denied initially

and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. 215-309). Plaintiff participated in the hearing on December 8, 2016, was

represented by counsel, and testified. (Tr. 166-190). A vocational expert ("VE") also participated

and testified. *Id*. On December 23, 2016, the ALJ found Plaintiff not disabled. (Tr. 126). On

December 18, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision,

and the ALJ's decision became the Commissioner's final decision. (Tr. 1-4). On February 4,

2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The

parties have completed briefing in this case. (R. 10 & 12).

Plaintiff asserts the following assignment of error: (1) the ALJ erred in evaluating the

opinion of a psychiatric nurse practitioner. (R. 10).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

Prior to her alleged onset date of January 26, 2015, Plaintiff frequently saw psychiatric

nurse practitioner Natalie G. Kozicky, PMHNP. (Tr. 439-448, 466-470, 494-497).

On January 8, 2015, Plaintiff told nurse Kozicky that over the holidays she had allegedly

tried self-harm by consuming an entire bottle of Nyquil. (Tr. 462). Nurse Kozicky increased the

dosage of Abilify to address worsening mood swings. *Id*.

On February 6, 2015, Plaintiff reported feeling manic, possibly due to the moon, and

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions
of the record cited by the parties in their briefs and also deemed relevant by the court to the
assignments of error raised.

reported that her menstrual cycle threw her off making her snappier with her husband and daughter. (Tr. 460). Nurse Kozicky again increased her Abilify dosage. *Id*. On examination Plaintiff had a hypomanic affect, logical thought, good recall, no suicidal/homicidal ideation or hallucinations, fair insight, and judgment that was impaired at times. *Id*.

On March 5, 2015, Plaintiff reported to nurse Kozicky that she was coming out of a three-week "funk," had been tearful and frustrated with racing thoughts and increased mood swings. (Tr. 502). She reported intending to go to the hospital that day for psychiatric admission but awoke feeling better. *Id*. On examination, Plaintiff had a euthymic and stable mood, sad affect, fair insight, and good judgment that was impaired at times. *Id*.

On March 23, 2015, Plaintiff began counseling with Andrea Snyder, Ph.D. (Tr. 561-564). Plaintiff reported obsessive thoughts, low self-esteem, sadness, social withdrawal, guilt, mood swings, stress, irritability, trouble relating to others, psychotic problems, and employment problems. (Tr. 562). On examination, no tremors or tic was noted. *Id*. Plaintiff had average intellectual functioning, fair insight, and fair judgment. (Tr. 563). Plaintiff reported auditory and visual hallucinations. *Id*. Dr. Snyder diagnosed psychotic disorder and assigned a Global Assessment of Functioning (GAF) scale score of 51, indicating moderate symptomology.[2] *Id*.

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) ("DSM-IV"). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See* DSM-IV at 34. An update of the DSM in 2013 eliminated the GAF scale because of "its conceptual lack of clarity ... and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

3

On April 15, 2015, Plaintiff reported increased irritability, mania, and moodiness tied to her menstrual cycle. (Tr. 506). Plaintiff stated her mood swings are usually under control and did not want to change her medications at the time. *Id*. On examination, Plaintiff had a depressed, labile, dysphoric, and anxious mood, fair insight, and judgment that was "impaired at times, intact, fair." (Tr. 507).

On May 22, 2015, Plaintiff saw nurse Kozicky and reported ongoing phases of mania and depression around her menstrual cycle, as well as increasing auditory hallucinations the past several weeks. (Tr. 509). On examination, Plaintiff had poor insight and judgment that was intact, impaired at times. (Tr. 510). Nurse Kozicky increased Plaintiff's Abilify. *Id*.

On June 19, 2015, Plaintiff reported fatigue which she attributed to her menstrual cycle. She also reported feeling overwhelmed, a depressed mood, and some panic attacks, but denied hallucinations or suicidal ideation. (Tr. 512). On examination, nurse Kozicky noted a pleasant but dysphoric mood with congruent affect, logical thought, fair insight, and judgment which was "fair, intact, impaired at times." (Tr. 513).

On June 19, 2015, Dr. Snyder noted Plaintiff had undergone "a mild to moderate degree of progress" since admission to psychotherapy. (Tr. 556). Dr. Snyder noted Plaintiff's mood and affect were congruent, thought process was logical and relevant, and suicide/homicide risk was assessed as minimal. (Tr. 555).

On July 20, 2015, despite financial issues since her husband quit his job, Plaintiff reported feeling stable, that her medications were working, and she denied any mood swings or racing thoughts. (Tr. 519). Examination was largely normal, and Plaintiff's medications were continued unchanged. (Tr. 520-521).

On July 23, 2015, Plaintiff was seen by Dr. Snyder and the results were unchanged from the

visit the prior month. (Tr. 553).

On August 31, 2019, Dr. Snyder again reported a mild to moderate degree of progress. (Tr. 551-552).

On September 15, 2015, Plaintiff reported to nurse Kozicky that she had been suicidal three times in the previous three weeks with the episodes lasting from hours to days. (Tr. 522). Each episode occurred during manic/hypomanic episodes except for one during a depressed episode. *Id*. Nurse Kozicky added Depakote to Plaintiff's prescription regimen. (Tr. 524).

On September 17, 2015, Dr. Snyder observed that Plaintiff's thought processes were logical, relevant with no psychotic symptoms evident. (Tr. 549). Her suicide/homicide risk was assessed as minimal, and Plaintiff denied any high-risk thoughts, plan or intent. (Tr. 549).

On October 1, 2015, Dr. Snyder observed that Plaintiff's thought processes were normal, and that Plaintiff's response to intervention was "good with anticipated progress." (Tr. 548).

On October 12, 2015, Plaintiff returned to nurse Kozicky complaining of "weird tics and feelings of restlessness," that her mood swings had decreased, and that she was happy with the way she was feeling. (Tr. 525). Nurse Kozicky continued the same medications but added Cogentin for restlessness. (Tr. 525, 527).

On November 9, 2015, Plaintiff reported to nurse Kozicky that her medications were working well. (Tr. 572).

On December 15, 2015, Plaintiff reported to nurse Kozicky that she was doing well on her medications, and that her mood swings were occurring only during her menstrual cycle. (Tr. 575). On examination Plaintiff had a euthymic mood, fair insight, and judgment that was "fair, intact, impaired at times." (Tr. 576).

On January 19, 2016, Plaintiff returned to nurse Kozicky and reported feeling "really

good," stating "this is the best I have felt in a long time." (Tr. 580).

On March 1, 2016, Plaintiff reported to nurse Kozicky that she continued to do well on her medications, that she was enjoying activities with her daughter, and that her racing thoughts had slowed down. (Tr. 583). Her psychological examination was unremarkable. (Tr. 584).

On May 2, 2016, Plaintiff reported to nurse Kozicky that she was upset because her husband was having heart problems. (Tr. 608). She reported having declined to take a job for which she was hired to care for her husband. She reported that her medications were working well. *Id*.

On September 2, 2016, Plaintiff reported to nurse Kozicky that she continued to feel well on her medications. (Tr. 602). On examination, Plaintiff's mood was pleasant and stable, she had no hallucinations, her thoughts were logical, her insight was fair, and her judgment was fair and intact. (Tr. 603).

On December 2, 2016, Plaintiff reported to nurse Kozicky that she had had periods of both depression and mania over the past month, that she had multiple stressors, that she experienced paranoia with occasional auditory and visual hallucinations, but she did not wish to have her medications changed. (Tr. 621). On examination, Plaintiff had a depressed mood, flat affect, dysphoria, congruent affect, logical thoughts, fair to poor insight, and judgment that was "fair, intact, impaired at times," and fair recall. (Tr. 622).

### 2.  Opinions Concerning Plaintiff's Functional Limitations

On February 25, 2015, nurse Kozicky completed a mental status questionnaire that was to be completed by a physician or psychologist. (Tr. 466-470). Nurse Kozicky reported having treated Plaintiff since 2013. (Tr. 466). She wrote that Plaintiff had a dysphoric mood and that Plaintiff described having fleeting suicidal ideations without intent or plan. *Id*. She observed

6

Plaintiff was fidgety and would pace in sessions, and had problems with focus and concentration. *Id*. She indicated Plaintiff had logical thought process, but becomes paranoid at times, and that Plaintiff had not had auditory hallucinations for the last few months. *Id*. Nurse Kozicky indicated Plaintiff had poor concentration, that her short-term and immediate memory was impaired, and that her intelligence was lower than average. *Id*. She further indicated Plaintiff's insight was fair, but her judgment was impaired, "especially during periods of delusional thinking and/or during manic episodes and severe depressive episodes." *Id*. Nurse Kozicky endorsed Plaintiff experiencing racing thoughts, impulsivity, and that Plaintiff becomes easily agitated. *Id*. Nurse Kozicky wrote that Plaintiff was responding to medications but needed regular adjustments, and that her prognosis was fair to poor. (Tr. 467). She opined that "pt does not like crowds, avoids social interactions as much as possible. It took me a long while to earn patient's trust. Does not do well with change." *Id*. Regarding reacting to the pressures of a work setting, nurse Kozicky predicted that Plaintiff "would have increased anxiety that would eventually lead [her] to deteriorate having symptoms of paranoia or even auditory hallucinations if she is completely overwhelmed." *Id*. Nurse Kozicky indicated the odds "of this happening are above 50% or so." *Id*. Nurse Kozicky wrote that Plaintiff's poor stress tolerance and the fact that she becomes easily agitated might prevent her ability to perform work activities. (Tr. 469).

On March 26, 2015, psychologist Andrea VanEstenberg, Ph.D., performed a consultative examination of Plaintiff. (Tr. 473-480). On mental status examination, Plaintiff's appearance and behavior were unremarkable and she was polite, cooperative, and she made adequate eye contact. (Tr. 476). Her speech and thought processes were well-organized and logical. *Id*. Plaintiff described her mood as "Okay," and Dr. VanEstenberg noted Plaintiff's affect was appropriate, pleasant, and cooperative. *Id*. Plaintiff reported suicidal thoughts without plan or intent, and also

reported auditory hallucinations. *Id*. Plaintiff also reported anxiety, shaking, and panic attacks. (Tr. 477). Dr. VanEstenberg found Plaintiff oriented x4, and observed no overt indications of delusional beliefs or behavioral manifestations of hallucinations. (Tr. 477). Plaintiff correctly calculated six digits forwards and backwards, had 3/3 recall after ten minutes, and accurately completed serial three subtraction tasks. *Id*. Based on her responses, Dr. VanEstenberg concluded Plaintiff had intellectual functioning in the average range. *Id*. Dr. VanEstenberg observed "no evidence of delusions, obsessive compulsive thoughts or dissociative and traumatic experiences." *Id*. Plaintiff reported auditory and visual hallucinations, feelings of depression, anxiety, temper issues, and mood swings. *Id*. Dr. VanEstenberg concluded Plaintiff had appropriate levels of insight and judgment. (Tr. 478). She diagnosed major depressive disorder (recurrent), moderate psychotic disorder, psychosocial problems, and assessed a Global Assessment of Functioning ("GAF") score of 45.[3] *Id*. Dr. VanEstenberg opined that Plaintiff "is expected to be able to understand and apply instructions in the work setting consistent with the average intellectual functioning and she performed well on the cognitive portion of today's evaluation," but "she may require additional prompting and direction." (Tr. 479).

Based on Plaintiff's reported symptoms, Dr. VanEstenberg opined Plaintiff "would be best suited for a single step, rudimentary task, and perhaps that allows additional processing time." *Id*. Dr. VanEstenberg noted Plaintiff made an unremarkable social presentation during the evaluation, but, based on Plaintiff's self-reported difficulties with others, "[t]here are expected limitations in her ability to conform to social expectations in a work setting due to reported

---

[3] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See* DSM-IV, *supra*, at 34.

symptoms including anxiety and panic and she would be best suited for a more isolated position." (Tr. 480). Dr. VanEstenberg opined that Plaintiff is "expected to respond appropriately to workplace pressures with minimal memorization, concentration, and socialization expectations." *Id*.

On September 27, 2016, nurse Kozicky wrote a brief letter stating that Plaintiff could not work due to "instability and frequent need for medication adjustment."[4] (Tr. 625).

On December 2, 2016, nurse Kozicky completed a checklist-style mental impairment questionnaire. (Tr. 617-620). She reported seeing Plaintiff every month for the past 4.5 years. (Tr. 617). Nurse Kozicky indicated Plaintiff's diagnosis was schizoaffective disorder, that Plaintiff was "doing well on present medication. She had been having severe mood swings with psychosis which breaks through medication quite frequently still." *Id*. She noted side-effects of Plaintiff's medications included drowsiness, fatigue, lethargy, and occasional dizziness. *Id*. Plaintiff's prognosis was fair to poor. *Id*. Nurse Kozicky checked boxes indicating that Plaintiff had moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, extreme difficulties in maintaining concentration, persistence, or pace, and four or more episodes of decompensation within a twelve-month period with each episode of at least two weeks duration. (Tr. 619). She also checked a box indicating that Plaintiff's condition resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation. (Tr. 620). Finally, nurse Kozicky checked a box indicating Plaintiff's impairments would result in her being absent from work more than four days per month. *Id*. Nurse Kozicky wrote that Plaintiff "has inability to maintain

---

[4] Nurse Kozicky wrote numerous similar letters on other dates employing the same statement of "instability and frequent need for medication adjustment." (Tr. 625-631).

mood stability. If [she] was sent to work, she most likely would have an exacerbation of symptoms and decompensate very quickly." *Id.*

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§

404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent her from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§

404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since January 26, 2015, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: schizoaffective disorder, chronic and diabetes with diabetic neuropathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(11), 404.1525, 404.1526, 416.920(11), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can only perform unskilled work (SVP 1 or SVP 2; work learned in 30 days or less, requiring little judgment); no arbitration, negotiation or care and/or welfare of others; low stress work (low production quotas); minimized social interactions with supervisors, co-workers and the public; work should be performed late afternoon/evening.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on *** 1983 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 26, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 119-125).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

In the sole assignment of error, Plaintiff asserts that the ALJ "erred in evaluating the opinions of [her] treating psychiatric nurse practitioner." (R. 11, PageID# 689).

On February 19, 2015, the date Plaintiff filed her applications for DIB and SSI, the regulations did not include nurse practitioners among the five identified types of "acceptable medical sources," but included them in the category of "other sources." *Compare* former 20 C.F.R. §§ 404.1513(a) & 416.913(a) with former 20 C.F.R. §§ 404.1513(d)(1) & 416.913(d)(1). While recent revisions to the regulations include licensed advanced practice registered nurses among the list of "acceptable medical sources," the revisions are expressly *not* retroactive. *See* 20 C.F.R. §§ 404.1502(a)(7) & 416.902(a)(7) ("Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice (**only with respect to claims filed (see § 416.325) on or** *after* **March 27, 2017**)(emphasis added)); *see also Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 530 (6th Cir. 1997) (finding the ALJ has the discretion to determine the appropriate weight to accord the opinion from an "other source" such as a chiropractor).

Although nurse practitioners are not "acceptable medical sources" under the regulations for the purposes of the case at bar, Social Security Ruling ("SSR") 06-03p, notes that information from "other sources" such as nurse practitioners "are important" and "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at * 2-3 (Aug. 9, 2006). A recent decision from within this district explained the ALJ's duties in connection with opinions from "other sources" as follows:

In evaluating the opinions from "other sources," an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted); *see* SSR 06–03P. The ruling's explanation of the consideration to be afforded "other source" opinions provides:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, *the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case*. In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in the notice of decision in hearing cases and in the notice of determination (that is, in the personalized disability notice) at the initial and reconsideration levels, if the determination is less than fully favorable.

SSR 06–03P, 2006 WL 2329939, at *6 (emphasis added).

Given this guidance, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, Case No. 15cv10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016); *see Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("An ALJ must consider other-source opinions and 'generally should explain the weight given to opinions for these 'other sources[.]'") (alteration in original) (quoting SSR 06–03P). Rather, "[t]he Sixth Circuit has repeatedly recognized that the commissioner must make an adequate record of the commissioner's consideration of an 'other source' who has seen the claimant in the source's professional capacity." *Estep*, 2016 WL 1242360, at *3 (collecting cases); *Hatfield v. Astrue*, No. 3:07–cv–242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (noting that "[t]he Sixth Circuit...appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight [given to an 'other source' opinions], as opposed to leaving the decision whether to explain to the ALJ's discretion") (citing *Cruse*, 502 F.3d at 541). **Still, "[s]o long as the ALJ addresses the opinion [from an 'other source'] and gives reasons for crediting or not crediting the opinion, the ALJ**

14

has complied with the regulations." *Drain v. Comm'r of Soc. Sec.*, No. 14cv12036, 2015 WL 4603038, at \*4 (E.D. Mich. July 30, 2015) (citing *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

*Hirko v. Colvin*, No. 1:15cv580, 2016 WL 4486852 at \*3 (N.D. Ohio Aug. 26, 2016) (Lioi, J.) (emphasis added).

To the extent Plaintiff insinuates that nurse Kozicky constitutes a "treating source" simply because she treated Plaintiff, such an argument overlooks the well-known fact that "treating source" is a term of art in the social security context. "A treating source is a physician, psychologist, or other acceptable medical source who has provided the claimant with medical treatment or evaluation and has had an ongoing relationship with the claimant." *Porter v. Comm'r of Soc. Sec.*, 634 Fed. Appx. 585, 586 (6th Cir. 2016) (citing 20 C.F.R. § 416.902) (noting that an individual did "not qualify as a treating source because she [was] not a physician, psychologist, or other acceptable medical"). Consequently, nurse Kozicky cannot be considered a "treating source" as she is not an "acceptable medical source," given the clear text of the regulations; and, she is properly classified as an "other source." *McNamara v. Comm'r of*, No. 15-1231, 2015 WL 8479642, at \*1 (6th Cir. Dec. 10, 2015) (*per curiam*) (citing 20 C.F.R. § 416.913(d)(1)); SSR 06-3p, 2006 WL 2329939, at \*2; *see also Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050 at \*4 (6th Cir. Nov. 16, 2015). While it is true that the ALJ erroneously refers to nurse Kozicky as a "treating psychiatrist" and mistakenly labels her a "doctor" several times in the decision (Tr. 123), the record is clear that nurse Kozicky is not a psychiatrist. Further, the court is unaware of any authority suggesting that a misstatement by the ALJ in this regard requires that the opinion of a non-acceptable medical source be subject to the rigors of the treating physician rule afforded to treating and acceptable medical sources.

With respect to nurse Kozicky, the decision states as follows:

15

The claimant received treatment at Psycare for issues related to parenting (B12F). Treatment notes from the claimant's treating psychiatrist, Natalie G. Kozieky, PMNHP, reveal that the claimant, as of January 2015, tolerated her medication well though she complained of mood swings and, later paranoia. Dr. Kozieky treated it with medication adjustments (B4F). In April 2015, the claimant reported that her menstrual cycle tends to affect her mood, increasing manic symptoms, with depression symptoms following, afterwards. Nevertheless, the claimant maintained her medication regimen and attended therapy and medication management, as scheduled (B9F). The claimant did not have difficulty with her treatment regimen, but complained of stressors increasing her symptoms, such as marital and financial strife (B12F). In September 2015, Dr. Kozieky added a mood stabilizer to the claimant's regimen, due to suicidal ruminations (B11F). By the following November, the claimant reported doing well, and attributed it to her medication (B14F). In fact, her improvement continued through 2016. She denied any problems with her medication. In May 2016, the claimant reported that she received a job offer, but declined it to stay home and care for her husband and daughter. (B14F and B18F).

As for the opinion evidence, on February 6, 2015, Dr. Kozieky reported that if the claimant understood directions, she could remember and follow them. She has impaired focus and concentration. She had difficulty persisting at tasks, which is dependent on her mood swings and racing thoughts. She avoids social interactions as much as possible. She deteriorates rapidly under pressure (B5F). I afford little weight to Dr. Kozieky's opinion as it does not take into account the claimant's great response to medication and relies heavily on the claimant's subjective complaints. The claimant socially isolates herself, but relates well to her family, including her husband, daughter and mother-in-law. She performs routine, repetitive, simple tasks, noted in her ability to care for her disabled husband and daughter. She is independent in activities of daily living as well as in self-care. Dr. Kozieky's opinion represents extreme restrictions on the claimant's functioning, which are not supported by the overall record.

(Tr. 122-123).

The explanation requirement for considering "other source" opinions, such as those of nurse Kozicky, is not the equivalent of the treating physician rule, which is applicable only to *acceptable medical sources*. Furthermore, "other-source opinions are not entitled to any special deference." *See Hill v. Comm'r of Soc. Sec.*, 560 Fed. App'x 547, 550 (6th Cir. 2014). The court finds no deficiency with the level of explanation the ALJ provided regarding nurse Kozicky's opinion, and the assignment of error is without merit.

Plaintiff, however, takes issue with the ALJ's statement that there was a "great response to medication." Instead, Plaintiff offers her own interpretation of the record and suggests that sometimes there was improvement, but sometimes there was a worsening of her symptoms. (R. 10, PageID# 691). Plaintiff also suggests that her ability to relate well to family members is not inherently inconsistent with nurse Kozicky's opinion that, if confronted by work stressors outside the home, Plaintiff's symptoms would likely increase in severity. *Id*. Such arguments, however, are tantamount to an invitation for this court to reweigh the evidence and to specifically assign greater weight to nurse Kozicky's opinion. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Moreover, the court's recitation of the evidence, *supra*, broadly supports the proposition that Plaintiff's symptoms were responsive to medication and are demonstrative of steady improvement.

Finally, Plaintiff argues that the decision, while addressing the February 6, 2015 opinion of nurse Kozicky, wholly failed to address her subsequent December 2, 2016 opinion. (R. 10, PageID# 691). The court finds no merit in this argument. Although the above quoted paragraph wherein the ALJ discusses the weight to be ascribed to nurse Kozicky's opinion expressly mentions only the February 6, 2015 opinion, Plaintiff identifies no material differences between the two opinions. She further cites no authority suggesting an ALJ must consider multiple opinions from the same source, separately, where those opinions are largely consistent. Because

17

the ALJ set forth sufficiently good reasons for rejecting the February 6, 2015 opinion, the court declines to impose a requirement that the ALJ repeat the same analysis with respect to the second opinion where the reasons given for rejection are equally applicable to the second opinion. Therefore, the court finds the sole assignment of error not well taken.

Moreover, as the court noted in its discussion of the evidence, the subsequent December 2, 2016 opinion is a check-the-box style form that identified no clinical test results or objective examination findings, and provides little explanation for the checked limitations. Especially in comparison to the earlier February 6, 2015 opinion, it is nearly bereft of explanation save for the statement that Plaintiff has mood instability and the prediction that Plaintiff "most likely would have an exacerbation of symptoms [and] decompensate very quickly" in a work setting. (Tr. 617-620). Assuming *arguendo* that the ALJ erred by failing to explain the weight afforded to this second opinion of nurse Kozicky, the court must consider whether the ALJ's failure to do so was harmless. The Commissioner argues the December 2016 opinion "which gave minimal explanation, is analogous to the checkbox forms criticized in *Ellars v. Commissioner*, 647 Fed. App'x 563 (6th Cir. 2016)." (R.12, PageID# 706). Further, the Commissioner contends that such opinion is patently deficient and, by extension, it was harmless error for the ALJ not to specifically address the opinion. The court agrees, as explained below.

Although the court is not presented with an opinion from an acceptable medical source whose opinion is subject to the rigors of the treating physician rule as discussed above, courts have suggested that "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal." *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (*citing NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6, 22 L. Ed. 2d 709, 89 S. Ct. 1426 (1969) (plurality opinion)

(where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")). The court concludes that if failing to give good reasons for rejecting a patently deficient opinion of a treating physician constitutes harmless error, so would an ALJ's failure to explain the weight given to a patently deficient opinion from an "other source."

In *Ellars*, the Sixth Circuit agreed with "the district court that the [ALJ] gave 'good reasons' for not affording [a treating physician's] opinion controlling weight." 647 Fed. App'x at 568. The *Ellars* court explained as follows:

> Dr. Schall's evaluation consisted of a two-page form on which he entered check marks in the blanks regarding plaintiff's physical limitations…. Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's "check-off form" of functional limitations that "did not cite clinical test results, observations, or other objective findings...." …. These cases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence. In the "REMARKS" section of the Physical Capacity Evaluation, Dr. Schall simply noted plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety. These remarks were not sufficient to explain Dr. Schall's findings.

*Id*. at 566-567 (internal citations omitted).[5]  Nevertheless, the Sixth Circuit affirmed the district court. Another Sixth Circuit decision went even further and determined that a check-box opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 475 (6th Cir. 2016) (*citing*

---

[5] As in *Ellars*, the ALJ herein did not actually identify the checkbox format of the opinion in question as a reason for discounting it. *Ellars v. Comm'r of Soc. Sec.*, No. 2:14cv2050, 2015 WL 3537442, at *3 (S.D. Ohio Jun. 4, 2015) (the ALJ observed that the medical opinion was "conclusory," and provided "very little explanation"), *report and recommendation adopted sub nom. Ellars v. Colvin*, 2015 WL 4538392 (S.D. Ohio Jul. 27, 2015).

*Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 551 (6th Cir. 2010)). The *Hernandez* decision explained that "[e]ven if the ALJ erred in failing to give good reasons for not abiding by the treating physician rule, it was harmless error" where the opinion in question was an unsupported check-box opinion. *Id.*; *accord Shepard v. Comm'r of Soc. Sec.*, 705 Fed. App'x 435, 441 (6th Cir. 2017) (finding that a doctor's "conclusory opinion, which provided no supporting findings or records and consisted largely of one word answers, circles, and check-marks" was suspect under *Hernandez*); *Toll v. Comm'r of Soc. Sec.*, No. 1:16cv705, 2017 WL 1017821, at *4 (W.D. Mich. Mar. 16, 2017) (finding that "even if the ALJ failed to provide good reasons" for assigning little weight to a treating source's opinion, such error was harmless where the opinion consisted of a check-box worksheet lacking any explanation beyond a diagnosis); *Denham v. Comm'r of Soc. Sec.*, No. 2:15cv2425, 2016 WL 4500713, at *3 (S.D. Ohio Aug. 29, 2016) ("The magistrate judge also correctly found that any error in the ALJ's consideration of Lewis's evaluation was harmless because the check-box form was so patently deficient that the Commissioner could not possibly credit it," and observing that "[t]he Sixth Circuit has cast doubt on the usefulness of check-box forms where the physician fails to give any explanation for his findings.").

Nurse Kozicky's second opinion from December of 2016 is substantially similar to the unexplained and unsupported checklist/checkbox opinions disfavored in the above cited cases. Based on the Sixth Circuit's decision in *Hernandez* and the other above cited decisions, the court finds similarly deficient the December 2016 check-the-box opinion. Therefore, to the extent the ALJ did not explain the weight afforded to this latter opinion, but assessed a former opinion that contained more thorough explanations, any such shortcoming in the ALJ's decision constitutes harmless error.

**VI. Conclusion**

For the foregoing reasons, it is recommended that the Commissioner's final decision be

AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: January 3, 2020

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985),** *reh'g denied,* **474 U.S. 1111 (1986).**